# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| JUN YU, <br><br> Plaintiff, <br><br> vs. <br><br> IDAHO STATE UNIVERSITY, <br><br> and <br><br> JOHN/JANE DOES I through X, whose true identities are presently unknown, <br><br> Defendants. | Case No.: 4:15-cv-00430-REB <br><br> **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT (Dkt. 55)** |

Pending is Defendant's Renewed Motion for Summary Judgment (Dkt. 55), seeking dismissal of all claims. Having reviewed the briefing and supporting filings, participated in oral argument, and otherwise being fully advised, the Court enters the following Decision and Order:

## I. BACKGROUND

Plaintiff Jun Yu ("Yu") is a Chinese national who matriculated into the Doctoral Clinical Psychology Program at Defendant Idaho State University ("ISU") in 2008. First Am. Compl. ¶¶ 14–16 (Dkt. 41). By mid-2012, all that remained for Yu to complete the requirements of the program was a successful clinical internship. *Id.* ¶ 75, 161. Yu coordinated with ISU and the prestigious Cleveland Clinic Center for Autism ("CCCA") in Cleveland, Ohio to develop a customized internship that would allow him to fulfill his final graduation requirement. *Id.* ¶ 87. He started the internship, which was designed to last for at least twelve months, on January 2, 2013. *Id.* ¶¶ 107, 108 (Dkt. 41).

**MEMORANDUM DECISION AND ORDER – 1**

Yu did not complete the internship, as he was dismissed from the CCCA in approximately April of 2013. *Id.* ¶ 130. In May of 2013, ISU told Yu that the graduate faculty of the Psychology Department had voted to dismiss him from its doctoral program. *Id.* ¶ 6, 136. After various unsuccessful voluntary appeals, Yu received a letter from ISU's Graduate School Dean dated October 2, 2013 that denied Yu's final appeal and stated that his dismissal was effective immediately. *Id.* ¶¶ 7–10; *see also* Pl.'s Resp. Exhibit PR1-8 (Dkt. 56-12) (the letter).

Yu initiated this action on September 16, 2015 by filing his Complaint against ISU, alleging liability for violations of Title VI of the Civil Rights Act, deprivations of his constitutional rights under 42 U.S.C. § 1983, and negligent infliction of emotional distress. Compl. ¶¶ 170–181 (Dkt. 1). On March 29, 2017, he filed an Amended Complaint, expanding his § 1983 claim to include allegations that ISU denied both his procedural due process rights (Count Two) and his substantive due process rights (Count Four). First Am. Compl. ¶¶ 354–359, 363–367 (Dkt. 41). He also added counts related to promissory estoppel and claims arising in contract law, bringing a total number of eighteen claims. *Id.* ¶¶ 368–435.

Both the Complaint and the First Amended Complaint name ISU and "John/Jane Does I through X, whose true identities are presently unknown" as defendants. Compl. (Dkt. 1); First Am. Compl. (Dkt. 41). Yu did not timely move to amend to substitute any Doe defendants or join additional defendants, and the deadline to do so has passed. Second Am. Case Mgmt. Order 1 (Dkt. 29). Further, Yu did not name as a defendant any individuals associated with ISU, whether acting in an official capacity or not.

ISU now renews its motion for summary judgment, seeking dismissal of all eighteen claims. It argues that several of Yu's claims, including his Title VI claim, are barred by the statute of limitations because the claims accrued more than two years prior to Yu's filing suit. It

also argues that ISU is immune from suit under the Eleventh Amendment for every claim except the Title VI claim.[1] For the reasons that follow, the Court denies ISU's summary judgment motion as to Yu's Title VI claim but grants the motion as to the other seventeen claims.

## II. LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact — a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

---

[1] After Yu filed his First Amended Complaint (Dkt. 41), ISU withdrew (Dkt. 45) its initial motion for summary judgment (Dkt. 32).

**MEMORANDUM DECISION AND ORDER – 3**

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by [his] own affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. Where reasonable minds could differ on the materials facts at issue, summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

### III. DISCUSSION

**A.  ISU Is Not Entitled to Summary Judgment on Yu's Title VI Claim.**

Count One of Yu's First Amended Complaint alleges a violation of Title VI of the Civil Rights Act of 1964 under 42 U.S.C. §§ 2000d through 2000d-7. First Am. Compl. ¶¶ 351–353 (Dkt. 41). ISU moves for summary judgment on this claim, arguing that (1) it is time-barred and (2) there is a lack of factual support in the record. Mem. in Supp. of Def.'s Renewed Mot. for Summ. J. 4–5, 9–10 (Dkt. 55-1). Each of these arguments will be addressed in turn.

1.  Yu's Title VI Claim Is Timely as a Matter of Law.

Title VI does not have its own statute of limitations; instead, "claims brought under 42 U.S.C. § 2000d are governed by the same state limitations period applicable to claims brought under § 1983." *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 712 (9th Cir. 1993). The state's personal injury statute of limitations applies to claims under 42 U.S.C. § 1983. *Wilson v. Garcia*,

**MEMORANDUM DECISION AND ORDER – 4**

471 U.S. 261, 275 (1985).² Applicable here, therefore, is Idaho's two year statute of limitations for personal injury claims, found at I.C. § 5-219(4).

Federal law determines when a Title VI claim accrues, for purposes of calculating the two-year statute of limitations under Idaho law. *See Elliott v. City of Union City*, 25 F.3d 800, 801–802 (9th Cir. 1994); *see also Taylor*, 993 F.2d at 712. Such a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Elliott*, 25 F.3d at 802 (quotation marks omitted).

ISU contends that Yu's Title VI claim accrued no later than May 2013, when ISU notified him the graduate faculty had voted to dismiss him from the doctoral program. *Id.* at 4. Therefore, ISU argues, Yu's September 2015 filing was untimely by some four months.

Yu argues, first, that ISU's May 2013 notification did not effectuate a dismissal from the doctoral program because he possessed appeal rights (that could have kept him in the program) that were not exhausted until October 2013. Pl.'s Resp. 5 (Dkt. 56). Second, Yu argues that the statute of limitations was equitably tolled while he participated in ISU's voluntary administrative appeals process. *Id.* at 6.

A more detailed description of the relevant facts and dates is useful in evaluating Yu's arguments. In a letter dated May 3, 2013, ISU told Yu:

> It was the unanimous conclusion of the Graduate Faculty of the Psychology Department that you are not making satisfactory progress in the program. A formal ballot was taken to record the votes of the 10 members of the Graduate Faculty present at the meeting; all 10 members *voted to dismiss* you from the doctoral program in clinical psychology based on your unsatisfactory progress toward degree completion.
> . . . .
> You have the right to appeal this decision by following the procedures stated on pp. 16–17 of the Idaho State University Graduate Catalog. . .

---

² *Wilson v. Garcia* was later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here.

Pl.'s Resp. Ex. PR1-4 p. 2 (Dkt. 56-8) (emphasis added). The letter was signed by Dr. Mark W. Roberts, Director of Clinical Training. *Id.*

Next, ISU sent Yu a letter dated May 17, 2013 telling him:

> The Graduate Faculty of the Psychology Department convened on May 16, 2013, to review your appeal of your dismissal. Upon deliberation of the reasons you provided for reconsideration and a review of your record, the Graduate Faculty voted unanimously (11-0) to sustain your dismissal from the doctoral program in clinical psychology. The committee considered each of the points you raised in your appeal letter of May 9, 2013.
> . . . .
> You have the right to appeal the decision of the Graduate Faculty of the Department of Psychology to the Dean of the College of Arts and Letters. See the Graduate Catalog, p. 16 for details. . .

Pl.'s Resp. Ex. PR1-6 pp. 2–4 (Dkt. 56-10). This letter was signed by Dr. Shannon Lynch, Chair of the Department of Psychology. *Id.* at 4.

Approximately six weeks later, Dr. Kandi Turley-Ames, Dean of the College of Arts and Letters sent Yu his third letter, dated July 30, 2013, telling him:

> After careful consideration of the documents provided by you, your attorney, and the Department of Psychology, I have decided to uphold the decision of the department regarding your dismissal from the Clinical Psychology Ph.D. program. The Graduate Faculty in the Department of Psychology voted unanimously for dismissal, first on May 3, 2013, and again on May 16, 2013, following a formal appeal from you submitted on May 9, 2013.
> . . . .
> Given the available evidence, the expectations of the American Psychological Association Committee on Accreditation, and the arguments and counterarguments regarding due process, I conclude that the decision made by the Department of Psychology regarding dismissal should be upheld. As per the ISU due process procedures outlined in the Idaho State University Graduate Catalog, pp. 16–17, you have the right to appeal this decision to the Graduate Council via the Graduate Dean. . .

**MEMORANDUM DECISION AND ORDER – 6**

Pl.'s Resp. Ex. PR1-7 pp. 2–3 (Dkt. 56-11).[3]

Finally, ISU sent Yu a fourth letter, dated October 2, 2013. In relevant part, it stated:

On October 2, 2013, the appeal of your dismissal from the doctoral program . . . was presented to the Graduate Council.
. . . .
The Graduate Council voted unanimously (9 yes, 0 no, 0 abstain) to sustain your dismissal and I concur with this decision. . . According to the Graduate Catalog, your dismissal from the doctoral program in clinical psychology is effective immediately.

Pl.'s Resp. Ex. PR1-8 p. 2 (Dkt. 56-12). This letter was signed by Dr. Cornelis J. Van der Schyf, Dean of the Graduate School.

ISU contends that the first letter, dated May 2, 2013, effectuated Yu's dismissal and therefore began the running of the statute of limitations period on the potential Title VI claim. Yu counters by pointing to the language in each of the first three letters that expressly acknowledges and describes Yu's right to appeal. He also refers to the ISU Graduate Catalog, which prescribes that a student who is being dismissed from the University has fifteen working days to appeal an adverse decision at each stage of the process except the final stage.[4] *Id.* (citing Pl.'s Resp. Ex. PR1-5 pp. 4–5 (Dkt. 56-9)). Yu argues, therefore, that a dismissal is not final and

---

[3] The record contains two pages of this letter, which were attached to Plaintiff's filing. However, both the syntax and context suggest that at least one page is missing.

[4] The Court is aware that the Graduate Catalog includes language describing "reinstatement" of a student. *E.g.*, "[i]f the dismissal is revoked . . . the student shall be reinstated;" "[i]f the decision is to revoke the dismissal, the Dean . . . will reinstate the student." Pl.'s Resp. Ex. PR1-5 pp. 4, 5 (Dkt. 56-9). However, none of the letters sent to Yu about his dismissal characterized the process as leading to "reinstatement," and all that remained for him to obtain his Ph.D. was to complete a successful internship. And, in the final letter he received — from the Dean of the Graduate School — he was informed that "according to the Graduate Catalog, your dismissal from the doctoral program in clinical psychology is effective immediately." To a student, such a statement is unmistakably a pronouncement from the Dean of the Graduate School that the student's dismissal has only then become "effective" — after the complete appeal process, "according to the Graduate Catalog."

**MEMORANDUM DECISION AND ORDER – 7**

effective until either (1) the Graduate Council sustains the dismissal at the final level of appeal; or (2) the student fails to appeal within the fifteen-day period following an adverse decision at a lower level of appeal. *Id.* Because he timely appealed each adverse decision here, Yu contends his dismissal did not take hold and therefore his Title VI claim did not accrue until October 2013 when the Graduate Council sustained his dismissal at the last step of any possible appeal. *Id.*

Yu also relies upon the language used in the letters as consistent with his argument. He argues that the phrase "voted to dismiss" in the first letter, referring to the Graduate Faculty, means that he had not yet been dismissed. Pl.'s Resp. 5 (Dkt. 56). He further argues that the phrase in the last letter that his dismissal was "effective immediately," combined with the fact that the other letters were silent as to an effective date, means the dismissal was not effective prior to the final letter of October 2, 2013. *Id.* Therefore, Yu argues, his dismissal was potentially looming but did not adhere unless he chose not to appeal or unsuccessfully exhausted all his appeals.[5] Thus, he argues, he was not harmed for Title VI purposes until receiving the final letter of October 2, 2013, when his dismissal could be appealed no further. *Id.*

In reply, ISU notes that Yu's First Amended Complaint alleges discriminatory conduct relating to a 2011 internship in Eastern Idaho and the 2013 internship at CCCA, as well as his ISU dismissal in 2013. Def.'s Reply Br. 2 (Dkt. 57). ISU stands on its assertion that Yu was dismissed on May 3, 2013, reasoning that by then he knew or had reason to know of the injury that serves as the basis of the Title VI claim. *Id.* That is, even if the injury was not yet "final" because Yu could still appeal it, ISU contends it is beyond debate that Yu became aware of the injury then and therefore the claim accrued no later than that date.

---

[5] This is not a case where Yu was obligated to exhaust administrative remedies prior to filing suit in federal court. He was entitled, but not required, to seek the protection of ISU's internal appeal procedures.

**MEMORANDUM DECISION AND ORDER – 8**

Separately, Yu argues that even if the claim accrued in May 2013, the statute of limitations should be equitably tolled while he voluntarily pursued an administrative remedy. Pl.'s Resp. 6 (Dkt. 56). Equitable tolling suspends the running of the statute of limitations while a plaintiff pursues one of multiple available legal remedies. Federal courts apply the state's equitable tolling rules unless doing so would defeat the goals of the federal statute at issue. *Hardin v. Straub*, 490 U.S. 536, 539 (1989). However, "statutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *McCuskey v. Canyon Cnty. Comm'rs*, 912 P.2d 100, 105 (Idaho 1996). Idaho Code section 5-219(4) does not provide for equitable tolling in a case of this nature.[6]

Nonetheless, Yu argues that Idaho law should not apply to this question because Idaho's constraints on applying equitable tolling are inconsistent with Title VI's goals of deterrence and compensation. In support, Yu cites cases applying equitable tolling under California law. Pl.'s Resp. Ex. PR1 pp. 9–10 (Dkt. 56-4). The Court is not persuaded and will not apply equitable tolling in this case. The fact that Idaho is more selective than California in allowing equitable tolling does not, by itself, justify holding that the purpose of Title VI would be defeated here by applying Idaho law. A state statute is not "'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation." *Robertson v. Wegmann*, 436 U.S. 584, 593 (1978). Nor is the purpose of deterrence or compensation defeated by declining to apply equitable tolling here. "Neither of these policies is significantly affected by this rule of limitations since plaintiffs can still readily enforce their claims, thereby recovering compensation and fostering deterrence, simply by commencing their actions within" the statutory period. *Board*

---

[6] Idaho Code section 5-219 tolls the statute of limitations in certain instances of fraud or concealment, but this is not such a case.

*of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 488 (1980) *abrogation on other grounds recognized by Farrell v. McDonough*, 966 F.2d 279, 280 (7th Cir. 1992).

The related questions of when a claim accrues and whether a claim is barred by the statute of limitations are both legal questions. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 779–780 (9th Cir. 2002). But the resolutions of these legal questions necessarily depend on the underlying facts, including the particular facts of precisely how and when Yu was allegedly injured. ISU argues Yu's Title VI claim accrued no later than May 2013 and his September 2015 complaint was therefore untimely. Yu argues that he was not injured for Title VI purposes until his final appeal was exhausted in October 2013, and therefore his complaint was timely.

The Court is persuaded as a matter of law that Yu was not injured until October 3, 2013, when he was formally notified that his final appeal was denied and that his dismissal was then "effective immediately." Yu had the right to appeal, and, therefore, the potential to change the University's "mind" about any dismissal, and so he was not injured during the pendency of the appeal proceedings. Yu certainly must have known that he was at risk of dismissal from the program when he received the first letter in May of 2013. But such a risk — regardless of whether one might view it as almost certain or only a possibility — is not the same as the actual injury he suffered when the Dean of the Graduate School informed him that the last step of his appeal rights had run out and that Yu was dismissed from the program "effective immediately." It was at that time, as a matter of law, that Yu suffered the "injury" that gave rise to his claim. As described *supra*, his claim accrued "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Elliott*, 25 F.3d at 802 (quotation marks omitted).

ISU has not shown that Yu's Title VI claim was untimely and it is therefore not entitled to summary judgment on that claim on that basis.

2. <u>Yu's Title VI Claim Is Sufficiently Pled and Supported to Survive Summary Judgment.</u>

Title VI prohibits any person or institution which receives federal funding from discriminating on the basis of race, color, or national origin. 42 U.S.C. § 2000d. However, Title VI prohibits only intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). ISU contends, based on Yu's allegation in his amended complaint that the alleged discrimination he suffered was a result of "ISU's cultural incompetence and aversive racism/prejudice," that any discrimination was unintentional and therefore not actionable under Title VI. Mem. in Supp. of Def.'s Renewed Mot. for Summ. J. 10 (Dkt. 55-1). By definition, ISU argues, cultural *incompetence* and *aversive* racism demonstrate a lack of intention and are therefore inconsistent with the requirement that any discrimination be intentional to be actionable.

Yu argues that he has adequately alleged intentional discrimination, including by alleging facts supporting a finding of disparate impact based on race and by introducing expert reports concluding he was the victim of intentional discrimination. Pl.'s Resp. 9–11 (Dkt. 56).

The Court is not persuaded by ISU's argument that the precise words Yu invoked in his amended complaint preclude the possibility of intentional discrimination. In light of Yu's argument on this point and the facts in the record, the Court finds the claim is adequately stated and supported to survive ISU's challenge based on lack of factual support. In this setting, Yu is entitled to all reasonable inferences that can be drawn from the evidence and with the benefit of such inferences his claims are sufficiently pled to survive summary judgment. Therefore, the Court will not grant summary judgment on Yu's Title VI claim.

B.  **ISU Is Entitled to Summary Judgment on Yu's Remaining Claims.**

ISU moves for summary judgment on Counts Two through Eighteen of Yu's First Amended Complaint, arguing that, as an arm of the State of Idaho, it is immune from suit under the Eleventh Amendment. Mem. in Supp. of Def.'s Renewed Mot. for Summ. J. 6–9 (Dkt. 55-1).

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. The Eleventh Amendment applies with the same force and effect to immunize a State from suits brought by its own citizens. *Hans v. Lousiana*, 134 U.S. 1 (1890). The immunity conferred by the Eleventh Amendment extends to a State and to "an arm or instrumentality of the State." *Lewis v. Clarke*, 137 S.Ct. 1285, 1290 (2017).

To overcome Eleventh Amendment immunity, a plaintiff must show either that the State has consented to be sued in federal court or that Congress has validly abrogated the immunity. Each claim must be examined separately to see if it is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) *superseded by statute on other grounds*. Congress may abrogate the sovereign immunity of the States if Congress has "unequivocally expressed its intent to abrogate the immunity" and has "acted pursuant to a valid exercise of power." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996) (citation and quotation marks omitted).

Yu concedes that ISU is an arm of the State of Idaho. Pl.'s Resp. 7 (Dkt. 56). And it is undisputed that ISU has not consented to be sued in federal court with respect to the claims at issue. Thus, Yu's only path forward is to show Congress validly abrogated Eleventh Amendment

immunity as to the claims at issue. He attempts to do this by invoking 42 U.S.C. § 2000d-7. *Id.* at 7. Subsection (a) of that statute provides, in its entirety, as follows:

> [42 U.S.C. § 2000d-7(a)](1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

Yu emphasizes that Title VI is one of the laws expressly referenced in paragraph (a)(1) of the statute. Pl.'s Resp. 7 (Dkt. 56). He interprets the statute as signifying that "under Title VI, the state is liable for all remedies, and therefore all claims, that can be levied against a public or private entity." *Id.* That is, he reads § 2000d-7 as abrogating immunity for all claims in a Title VI action rather than just as to the Title VI claim itself.

Yu quotes *Alexander v. Sandoval*, 532 U.S. 275 (2001), in support of his interpretation of § 2000d-7. But *Alexander* stands for no such principle. In *Alexander*, the Court faced the narrow question of whether Title VI created a private cause of action. *Id.* at 279. Nothing in the opinion indicates there were other federal or state law claims joined with the Title VI claim. The opinion did not need to, and did not, address the applicability of the statutory abrogation to other claims. The only relevant treatment of § 2000d-7 in *Alexander* is a quotation of part of the statute:

> 42 U.S.C. § 2000d–7, expressly abrogated States' sovereign immunity against suits brought in federal court *to enforce Title VI* and provided that in a suit against a State "remedies (including remedies both at law and in equity) are available ... to the same extent as such remedies are available ... in the suit against any public or private entity other than a State," § 2000d–7(a)(2).

**MEMORANDUM DECISION AND ORDER – 13**

*Alexander*, 532 U.S. at 280 (emphasis added).

Hence, *Alexander* does not support Yu's argument that § 2000d-7 abrogates Eleventh Amendment immunity for all claims in a Title VI action, particularly in light of *Pennhurst's* requirement for a claim-by-claim analysis. At best, *Alexander* is neutral with respect to Yu's contention — it says nothing at all about the subject. Alternatively, it may be read to support the contrary conclusion of an abrogation limited to only those claims "to enforce Title VI."

Nor does the plain language of the statute support Yu's reading. The clause "for such a violation" in paragraph (2) can only refer to "a violation of a statute referred to in paragraph (1)" — language found earlier in the same sentence. A common sense reading of the plain language "for such a violation" means that the abrogation of Eleventh Amendment immunity applies only to claims brought under the statutes expressed in paragraph (1), including Title VI. Thus, paragraph (2) is silent as to all violations other than those expressed in paragraph (1). This reading of the statute is internally consistent with the plain language of paragraph (1), which abrogates Eleventh Amendment immunity "for a violation of" specific, enumerated federal laws, particularly because paragraph (1) is itself also silent as to other violations. Therefore, the Court holds the statute does not abrogate Eleventh Amendment immunity as to other violations.

This reading of § 2000d-7 is consistent with both *Seminole Tribe* and *Pennhurst*. The statute cannot fairly be read under *Seminole Tribe* as an "unequivocal express[ion]" of Congressional intent to abrogate Eleventh Amendment immunity beyond the identified kinds of claims. Only a strained reading of the decision in *Seminole Tribe* even permits a possible ambiguity in the decision as to whether the statute's language encompasses claims beyond those enumerated. As to *Pennhurst*, the necessity to examine each claim separately for Eleventh Amendment immunity undermines Yu's contention that abrogated immunity on one claim means

**MEMORANDUM DECISION AND ORDER – 14**

abrogated immunity on all claims. Finally, in its own research the Court has not identified any case law supporting Yu's contention.

Otherwise, Yu has not cited a basis besides 42 U.S.C. § 2000d-7 to avoid dismissal of his § 1983 claims on Eleventh Amendment grounds. Nor is it clear he could do so:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. . . . Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal–state balance in that respect.

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (citations and quotation marks omitted).

This does not mean that Yu, or any other plaintiff who claims to have suffered a deprivation of his or her civil rights on facts such as these, is necessarily without recourse: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 n.10 (citing *Ex parte Young*, 209 U.S. 123, 159–160 (1908)). Under the *Young* doctrine, a prevailing plaintiff in such an action is not entitled to damages from State coffers but may be entitled to injunctive relief such as an order enjoining future unlawful conduct by State officials. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). However, Yu did not name any State officials as defendants. The deadline for motions to join parties and/or amend pleadings was December 30, 2015. Second Am. Case Mgmt. Order 1 (Dkt. 29).

Because Yu has not shown that Congress abrogated ISU's Eleventh Amendment immunity with respect to any claim besides his Title VI claim,[7] the Court holds that ISU is immune from suit on Counts Two through Eighteen of Yu's First Amended Complaint and ISU's motion for summary judgment shall be granted as to those claims.

## IV. CONCLUSION

Yu has made a prima facie case establishing his Title VI claim, which is not time-barred. ISU has shown that it is immune from suit under the Eleventh Amendment for the other seventeen counts alleged in Yu's First Amended Complaint (Dkt. 41).

## V. ORDER

Based on the foregoing, Defendant's Renewed Motion for Summary Judgment (Dkt. 55) is **DENIED** with respect to Count One, alleging a violation of Title VI, and is **GRANTED** with respect to Counts Two through Eighteen.

DATED: January 26, 2018

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

---

[7] 42 U.S.C. § 2000d-7 expressly abrogates Eleventh Amendment immunity on Title VI claims; hence, Count One is not subject to dismissal on the same basis.