# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| JUN YU,<br><br>    Plaintiff,<br><br>vs.<br><br>IDAHO STATE UNIVERSITY,<br><br>    Defendant. | Case No.: 4:15-cv-00430-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION IN LIMINE RE: SPOLIATION OF EVIDENCE AND ADVERSE INFERENCE INSTRUCTION (DKT. 84)**<br><br>**DEFENDANT'S MOTION TO STRIKE EXHIBIT F (DKT. 112)** |

This decision resolves Plaintiff's Motion in Limine Re: Spoliation of Evidence and Adverse Inference Instruction (Dkt. 84) and Defendant's Motion to Strike raised in its memorandum opposing the instant motion in limine (Dkt. 112).

## BACKGROUND

Plaintiff Jun Yu alleges that Defendant Idaho State University (hereafter "Defendant" or "ISU") deliberately and unlawfully discriminated against him due to his national origin in violation of Title VI of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000d et. seq. FAC ¶ 353 (Dkt. 41). In his motion, Plaintiff argues that Defendant has failed to preserve relevant evidence and therefore the jury should be instructed that it may presume that the destroyed evidence, if produced, would have been adverse to Defendant. In Defendant's motion, it seeks to strike an exhibit Plaintiff filed in support of its motion in limine.

## LEGAL STANDARDS

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Balla v. Idaho State Bd. of Corr.*, 119 F.Supp. 3d 1271, 1282 (D. Idaho

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 1**

Aug. 11, 2015). A party seeking sanctions for spoliation must establish that the opposing party (1) destroyed relevant evidence and (2) had an obligation to preserve the evidence when it was destroyed or altered. *Harmon v. United States*, 2017 WL 1115158 at *2 (D. Idaho, Mar. 24, 2017) (citing *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)).

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "When considering the appropriate sanction, courts consider the: (1) willfulness or bad faith of the party responsible for loss of evidence; (2) degree of prejudice sustained by opposing party; and (3) what is required to cure prejudice." *Harmon*, 2017 WL 1115158 at *6 (citation and internal quotation marks omitted).

## DISCUSSION

1. <u>Destruction of Evidence.</u>

Plaintiff's motion focuses on Defendant's failure to produce certain student records. Defendant initially refused[1] to produce the records sought in Plaintiff's initial discovery request. Plaintiff moved to compel discovery. The Court granted the motion (Dkt. 40) and ordered Defendant to provide the student records under a protective order designed to protect the privacy of the students involved, while still allowing Plaintiff and his counsel to access information relevant to Plaintiff's claim against the university. In summary, the records were ordered to be produced, but with only the nationality and ethnic origin of the student unredacted. In other words, the identifying information other than nationality and ethnic origin continued to be confidential and not disclosed. (Dkt. 46.) Specifically, the Protective Order required:

That the Defendant, Idaho State University, will provide to Plaintiff the student

---

[1] Defendant's refusal was based on its position that the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g(b)(2), prohibited producing records of other students.

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 2**

records of all students who were enrolled at Idaho State University pursuing a doctorate degree in Clinical Psychology between 2008 and 2015. The information disclosed will include each student's transcript containing grades, test scores and courses taken, official letters regarding the student's status at ISU, including any academic probation or suspension records maintained by the Office of Academic Affairs. The information disclosed will also include all material and any related data on each students' externships and internships applied for, approved, disapproved, suspended or curtailed, and taken with all related documentation to include rationale for approval or disapproval or curtailment; and, the contracts and or agreements governing the approved internships whether in the state of Idaho or elsewhere in the United States or abroad.

Prot. Order 1–2 (Dkt. 46).

On July 20, 2017, Defendant provided Plaintiff with student records under the Protective Order. Plaintiff's counsel promptly notified Defendant's counsel the production was incomplete because it did not include "all material and any related data on each students' externships and internships."

On February 22, 2018, Defendant supplemented its production, but Plaintiff again questioned the accuracy and completeness of the production. As described by Plaintiff's counsel in a letter to Defendant's counsel, "the documents provided were contracts, affiliation agreements, contract amendments, services agreements and extern agreements governing positions for externships or service learning positions but nothing regarding internships." Coulter Aff. Ex. B (Dkt. 84-3).

In a further letter exchange about Plaintiff's contention that the document production was inadequate, Defendant's counsel responded that "feedback from internship sites regarding student progress is variable. Mid-year progress reports are normally not provided to the Department. Some internship sites provide the Department with a letter at the completion of the internship noting that a student completed the internship. If such letters were received by the Department, they were maintained in the respective student's file previously provided." Coulter

Aff. Ex. D (Dkt. 84-5).

In support of his argument that the requested documents were either not preserved or not produced, Plaintiff points to language contained in several annual versions of a Clinical Student Handbook used by the ISU Department of Psychology. The submitted excerpts state that "[t]he student's internship 'contract' letter is filed with the ISU Registrar prior to internship onset, providing evidence of the full-time nature of the internship requirement. The student's internship training director will file periodic evaluations of intern's performance throughout the year with the DCT."[2] Coulter Aff. Ex. E (Dkt. 84-6). Moreover, although not specifically referenced by Plaintiff's counsel, the Handbook excerpts also state that "[a] copy of the internship completion letter (or certificate) is filed with the ISU Registrar" and that "[t]he internship is a degree requirement, an accreditation requirement, a licensure requirement, and educational in nature, rather than simply a job." *Id.*

Plaintiff contends that the Defendant's explanations for the missing pieces of the discovery productions are completely at odds with the language in the Psychology Department's own Handbooks requiring that certain internship-related records be obtained and retained. Plaintiff argues that because internships are required to receive a degree, for accreditation and licensure, and because internship completion letters/certificates must be filed with the ISU Registrar, then Defendant's explanation to Plaintiff that "*[s]ome* internship sites provide the Department with a letter at the completion of the internship noting that a student completed the internship" rings hollow. Coulter Aff. Ex. D (Dkt. 84-5) (emphasis added). Similarly, Defendant's explanation that "[m]id-year progress reports are normally not provided to the Department" (*id.*) contradicts the Handbook's requirement that a "student's internship training

---

[2] "DCT" refers to the Director of Clinical Training.

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 4**

director *will file* periodic evaluations of intern's performance throughout the year with the DCT." (Emphasis added.)

The Court cannot reconcile Defendant's explanations with the plain and unambiguous language of Defendant's own Handbooks. Neither the justifications made in the letters exchanged with opposing counsel, nor the explanations offered during the hearing upon this motion, gave either a cogent or defensible explanation for the Defendant's failure to produce documents which were required to be produced pursuant to prior order of the Court *and* which the Psychology Department in its own Handbook requires be obtained and retained.

There is a disconnect between the requirement that such documents be obtained and maintained, and ISU's explanation for the fact that such documents were not produced. Plaintiff contends that they were purposefully not produced and are either being hidden from Plaintiff or have been destroyed. The Court is not convinced that such a nefarious explanation is accurate. However, the Court is also alarmed that ISU did not locate and produce records that are essential evidence of the university's own degree requirements in the doctoral psychology program and cannot offer any sensible explanation for the failure to produce such records. The Defendant flatly has failed to justify its failure to produce student internship records.

2. Duty to Preserve.

The prior Protective Order in this case required Defendant to provide Plaintiff "the student records of all students who were enrolled at Idaho State University pursuing a doctorate degree in Clinical Psychology between 2008 and 2015." (Dkt. 46.) Defendant argues that May 3, 2013, the day Plaintiff was dismissed from ISU, is the earliest date its obligation to preserve evidence may have been triggered. Def.'s Opp'n 7 (Dkt. 112). It also argues that, whenever it may be that a duty to preserve arose, such duty did not apply to internship evaluations regarding

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 5**

other students. *Id.* But Plaintiff implies that as soon as Defendant was on notice of his Title VI claim alleging race and national origin discrimination, Defendant had a duty to preserve relevant evidence regarding other students because the claim requires comparing Plaintiff's treatment to the treatment of similarly-situated students.

The Court is persuaded that Defendant had a duty to preserve internship records of other students in its Department of Psychology. The Court acknowledges that Defendant's purported explanation creates a vacuum of sorts – in other words, ISU contends on one hand that someone looked for such records and couldn't find any and then contends on the other hand that there may never have been such records. But those explanations are inadequate when there is no sensible reason that such records would have been discarded in the absence of some precisely drawn, factually defensible, and carefully followed document retention policy for student records.[3] The records in question are, after all, not akin to sign-in sheets for grad student lunch meetings or something similarly innocuous. They are records of contracts for student internships, evaluations of a student's work in such internships, and certification of students' successful completion of such internships – all of which relate directly to essential degree requirements. As described above, the Psychology Department's own handbook prescribes that "[t]he internship is a degree requirement, an accreditation requirement, a licensure requirement, and educational in nature, rather than simply a job."

As to the date on which such a duty arose, it is not necessary to decide upon a particular date other than to rule that the duty arose no later than October 2, 2013, when Plaintiff's final appeal was denied and he was dismissed from Idaho State University. At that point, litigation

---

[3] Of significance here is the fact that ISU has not suggested in any way that such records were obtained and maintained, but then discarded for some legitimate reason, such as a prescribed, implemented and defensible record retention policy.

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 6**

was reasonably foreseeable and it was or should have been apparent to Defendant that records regarding other students in the Clinical Psychology program would be relevant evidence. Because the Protective Order required Defendant to produce student records as late as 2015, and Defendant was subject to a duty to preserve by 2013, some student records would necessarily have been generated after Defendant's duty to preserve arose. Therefore, Plaintiff has established that – at least as to internship records for other doctoral psychology students – Defendant failed to produce relevant evidence that was subject to a duty to preserve.

3. The Spoliation Remedy.

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "When considering the appropriate sanction, courts consider the: (1) willfulness or bad faith of the party responsible for loss of evidence; (2) degree of prejudice sustained by opposing party; and (3) what is required to cure prejudice." *Harmon*, 2017 WL 1115158 at *6 (citation and internal quotation marks omitted).

There is nothing before the Court in the form of an affidavit, declaration, or deposition testimony explaining the nature of any search that may have been performed for the records in question. Nor is there any explanation, in any such form, of why records which are patently significant to evidencing completion of the necessary degree requirements cannot be found. As described earlier, Plaintiff's counsel contends that there has been an intentional act to destroy or withhold such records. As stated earlier, the Court is not persuaded of such an intentional act. But it is not necessary to conclude that the failure to produce such records was intentional because – even giving the circumstances the most innocent explanation that could possibly be applied – the Defendant either made a less than adequate search for the records, or the University

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 7**

did not obtain or did not preserve such records in the ordinary course as called for in its own program rules.  Wherever the failure lies, it is inexplicable and indefensible that the records were not produced.  Because they were not produced, Plaintiff was deprived of evidence that should exist, regardless of whether such evidence (had it been produced) would have supported or not supported Plaintiff's case.

In such circumstances, the Court cannot say that Defendant intentionally "lost" the evidence.  However, the Court can conclude that Defendant was, at a minimum, negligent in the failure to produce such evidence.  The records were required to be obtained and kept both to ensure the student fulfilled the doctoral program requirements and for the university to confirm and make a record of the successful completion of the program requirements.  Yet, Defendant says they either never did exist, or they cannot be found.

Turning to the next factor, the Court is persuaded that Plaintiff's prejudice due to the lack of this evidence is significant.  This is a discrimination case.  One of Plaintiff's burdens at trial is to persuade the jury that he was treated differently than similarly-situated students – here, other doctoral students.  The absent evidence – internship records for other doctoral students – is of obvious and important relevance.  Plaintiff's ability to present his case, and the jury's ability to evaluate it, are substantially undermined by the lack of evidence as to how similarly-situated students were treated.  This is especially so because the record indicates that Defendant contends that Plaintiff was dismissed from the doctoral program in no small part because of his difficulty in satisfactorily completing an internship.  Examining and comparing how other students fared in their internships and the University's response to any difficulties they may have had therefore implicates the comparison Plaintiff seeks to make.

That leaves the question of how best to cure the prejudice visited upon Plaintiff by

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 8**

Defendant's failure to produce the internship records. For Plaintiff, such records would have been crucial evidence as to whether Defendant discriminated against him. Perhaps such records would support his claim; perhaps they would not. But he will never know for certain, because they were not provided to him.

The most sensible means of seeking to cure the prejudice, in these circumstances, is to give the jury a permissive adverse inference instruction, *i.e.*, the jurors will be instructed that they may draw an inference that the missing records would have supported Plaintiff's claim of discrimination. This is less than what Plaintiff seeks, but the Court is not entirely persuaded Defendant's failure to produce the records at issue was willful or in bad faith. Correspondingly, however, the failure of Defendant to produce such records, even if from negligence rather than willfulness or in bad faith, would effectively be condoned if there was not some sanction for its failure.

The precise language of the adverse inference instruction may be subject to change at trial,[4] but the Court's present intention is to give an instruction in substantially the following form:

> To prove his claim of discrimination, one element Plaintiff Jun Yu must prove is that the Defendant, Idaho State University, intentionally treated him differently from similarly-situated students who were not members of his protected class. Defendant was required by its own graduate program rules to collect certain records for all doctoral psychology students. Those included records proving that the student had obtained and successfully completed a psychology clinical practice internship, which is one of the requirements for graduation. Such records were to include a copy of the contract between the student and the entity providing the internship, and to include periodic evaluations of the student's performance in completing the internship. In this lawsuit, the Plaintiff made a proper request to the

---

[4] Although the record is clear that not all internship records described by the graduate student handbooks were provided to Plaintiff, it is not entirely clear whether any such records were provided. If the details in the record regarding that subject change in material fashion before the jury is instructed, then the Court may consider revising or not giving the permissive adverse instruction.

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 9**

Defendant to provide such records. The Court ordered the Defendant to produce the records, so that Plaintiff could examine how other doctoral students' internships were handled in comparison to the Defendant's circumstances. The Defendant did not provide records relating to internships of other students, and it said that such records had either never been obtained or could not be located. Because Defendant did not provide such records, you may infer that if such records had been produced, they would have supported Plaintiff's claim of discrimination.

4. <u>Defendant's Motion to Strike Is Denied as Moot.</u>

Plaintiff's motion includes argument based on a letter from his retained expert Dr. Naya A. Fouad, who has served as Director of Clinical Training in the Department of Psychology at the University of Wisconsin-Milwaukee. Plf.'s Mem. ISO Mot. in Limine re: Spoliation of Evid. 4 (Dkt. 84-1). Attached to the affidavit of Plaintiff's counsel are Dr. Fouad's curriculum vitae and a letter drafted by Dr. Fouad regarding record-keeping practices in a university Department of Psychology setting. Coulter Aff. Exs. F, G (Dkts. 84-7, 84-8).

Defendant moves to strike Dr. Fouad's statements,[5] arguing that she is not a psychology student record expert, she was not disclosed as a student record expert, and her testimony was not provided under oath. Def.'s Opp'n 2 (Dkt. 112.)

In deciding Plaintiff's instant motion in limine, the Court did not rely on Dr. Fouad's statements or on Plaintiff's argument regarding them. Rather, in deciding Plaintiff's motion the Court has relied entirely on Defendant's own documents, primarily the Handbooks, the letter of Defendant's counsel letter to Plaintiff's counsel dated March 14, 2018, and statements of Defendant's counsel during the hearing upon this motion. Because the Court has not relied on Dr. Fouad's statements, Defendant's motion to strike such statements is denied as moot.

---

[5] Defendant's motion to strike refers to "Exhibit F" as "regarding the compilation of psychology student records at universities generally," Def.'s Opp'n 2 (Dkt. 112), but Exhibit F is actually Dr. Fouad's curriculum vitae and not her letter. Regardless, the Court need not scrutinize the precise scope of the motion.

**DECISION RE: SPOLIATION MOTION IN LIMINE AND MOTION TO STRIKE – 10**

# ORDER

For the reasons stated above, **IT IS HEREBY ORDERED**:

- Plaintiff's Motion in Limine Re: Spoliation of Evidence and Adverse Inference Instruction (Dkt. 84) is **GRANTED**.  A permissive adverse inference instruction regarding Defendant's failure to produce certain records pertaining to other doctoral students will be given to the jury.

- Defendant's Motion to Strike (Dkt. 112) is **DENIED**.

DATED:  February 13, 2019

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge